# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

# NORTHERN DIVISION

| | |
|---|---|
| S.P.S. TIRE & SERVICE CENTER, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>WEBER-MORGAN HEALTH DEPARTMENT and JOHN DOES 1-25,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER<br><br>Case No. 1:08CV92 DAK |

This matter is before the court on Defendant Weber-Morgan Health Department's (the "Health Department") Motion for Summary Judgment and Motion to Strike Craig Butters Affidavit. A hearing on the motions was held on June 15, 2010. At the hearing, Defendant Health Department was represented by Barton H. Kunz, II. Plaintiff S.P.S. Tire & Service Center, Inc. ("SPS Tire") was represented by Joseph M. Chambers. Before the hearing, the court carefully considered the memoranda and other materials submitted by the parties. Since taking the motions under advisement, the court has further considered the law and facts relating to the motions. Now being fully advised, the court renders the following Memorandum Decision and Order.

## I. BACKGROUND

S.P.S. Tire is a general automotive truck service and repair facility and is also an emissions testing station. The Weber-Morgan Health Department (the "Health Department") is

a governmental subdivision of the State of Utah and has adopted regulations for emission testing in Weber and Morgan Counties.  This case arises from a situation in which an SPS Tire employee fraudulently substituted a vehicle that passed an emissions test for one that did not.[1]

Other than rare exceptions inapplicable here, the I/M program, consistent with EPA mandates, requires vehicles from model years 1996 and newer to pass an on-board diagnostic ("OBD") check.   This check uses a computer at an I/M program station to take a reading from the vehicle's computer, which collects data from several monitors in the vehicle.   The vehicle's monitors gauge the functionality of up to eleven emission control systems, such as the catalytic converter, fuel system, evaporative system, and exhaust gas recirculation valve.   If the system being checked by the monitor is operating within specified parameters, the monitor will read as "ready."   If the system being checked by the monitor is not operating within specified parameters, or if the monitor itself is not working, it will show as "not ready."

An I/M program station uses a computer called an analyzer to access this data collected in the vehicle's computer.   If the vehicle's monitors read "ready," the vehicle passes the emissions inspection.  If the emission test monitors show "not ready," and the vehicle's "check engine" light is not illuminated, the vehicle neither passes nor fails because it either needs to be driven before the computer determines if the vehicle passes or fails, or the monitors may be malfunctioning.  If the system is not operating within specified parameters, the monitor will read

---

[1] This case was previously before the Honorable J. Thomas Greene.  When the court denied SPS Tire's Motion for a Preliminary Injunction, the court also ruled that SPS Tire was vicariously liable for the fraudulent test committed by its employee, so that issue is not in dispute.

"not ready" and the vehicle's "check engine" light will be illuminated.  In that case, the vehicle will fail the emissions test.

The vehicle's monitors are designed to set to "ready" status through typical driving operation.  However, vehicle manufacturers have created drive cycles, which, if followed, should reset a vehicle's monitors (assuming they are not malfunctioning) more quickly than typical driving patterns.  This action involves a situation in which the vehicle could not be made "ready" to test.

In the fall of 2007, a customer with a 2000 Saturn LS2 came to SPS Tire for an emissions inspection and failed its first exam.  SPS Tire performed emissions related repairs on the vehicle.  The vehicle, however, could not be made ready for an emissions inspection using the OBD process after emissions related repairs.  But, using a tailpipe test, it was determined the car was no longer polluting.

When a vehicle is not ready for an emissions inspection using the OBD system, it can usually be made ready through normal driving operation.  This usually takes a drive of around 35 to 40 miles.  The Saturn at issue, however, could not be made ready after a month's worth of driving operation; about 1,100 more miles were put on the car during this time.  SPS Tire helped the driver of the Saturn get several temporary permits from the DMV while attempting to have the Saturn come back to a "ready" state for its emissions inspection.  After the test of the Saturn by SPS Tire's employee, Defendant administered its own OBD based test on the Saturn, which it then passed.

On September 27, 2007, the Health Department's Lead Emissions Auditor conducted a

data audit on SPS Tire's OBD check results and discovered that an SPS Tire employee had substituted a "ready" vehicle for a "not ready" 2000 Saturn LS2 earlier that month.[2] The Health Department then issued SPS Tire and the individual employee a "Notice of Station and Tester Suspension" on October 1, 2007. The letter notified SPS Tire of the fraudulent test and the penalties the Health Department intended to apply: a six-month suspension against SPS Tire for its second violation, and a six-month suspension against the employee for his first violation. The letter also described the three options available: acceptance, negotiated consent agreement, or appeal. The Health Department offered SPS Tire a negotiated consent agreement in which SPS Tire could pay $11,000-$12,000.

The SPS Tire employee admitted that he had substituted a ready vehicle after he was unable to make a customer's vehicle ready. The employee did not contact the Health Department to seek a waiver when he was unable to make the customer's vehicle ready.

The Health Department claims that, at the time relevant to this suit, if an I/M program station could not make a vehicle's monitors ready, it could refer the vehicle owner to the Health Department for a waiver. It claims that this option was publicized to I/M program stations before the incident giving rise to this suit by publication in an issue of the Weber County I/M Bulletin, which was required to be posted near station computer analyzers and signed by station owners and testers. The Health Department's records indicate that SPS Tire posted the bulletin.

---

[2] SPS Tire points out, though, that the employee had determined in other ways that the car was not polluting. It explains that its employee went through extenuated effort to administer an emissions inspection through the OBD method, including having an additional 1,100 miles put on the car while assisting the vehicle owner with obtaining temporary registration from the DMV. SPS Tire claims that it did the most that it could do in light of the lack of guidance from Defendant with regard to vehicles that could not be made ready to test.

SPS Tire, however, disagrees, and argues that during 2006-2007, there were no waiver provisions in the Regulations or Bulletins for cars that could not be made ready for emissions inspections. Accordingly, SPS Tire refused to enter the consent agreement, arguing that the amount the Health Department wanted to charge was higher than legally allowed. SPS Tire followed the appeal process through to the instant action.

In this appeal of the Health Department's ruling, SPS Tire claims that the Health Department lacks the authority to enforce its regulations, or, in the alternative, that it lacks authority to require more than a $3,000 payment in a consent agreement.[3] It also argues that the Health Department's regulations should be voided because the regulations do not address the situation encountered here–when a vehicle cannot be made "ready" to test. Finally, SPS Tire argues that the Health Department violated SPS Tire's due process rights when the Health Department provided a packet of proposed exhibits to the Health Department's appeals board prior to SPS Tire's hearing.

In the instant Motion for Summary Judgment, the Health Department argues that it enjoys broad statutory authority to adopt and enforce regulations benefitting public health and environmental health quality. It contends that neither Utah Code Annotated § 17-53-223 (which limits fines imposed by county legislative bodies) nor an error in a summary of the Health Department's I/M program regulations drafted by the Utah Air Quality Board imposes a cap on the amount the Health Department can require from violating I/M program stations to enter voluntary negotiated consent agreements. Specifically, it argues that Section 17-53-223 does not

---

[3] SPS Tire also argues, based on a different statutory provision, that the Health Department cannot seek more than $1,000 for a consent agreement.

apply to health departments and that a mistake in the summary of a regulation does not alter the regulation.

In addition, the Health Department argues that, contrary to SPS Tire's claim, the I/M program does provide a method for dealing with vehicles that cannot be made ready to test. Finally, the Health Department contends that the delivery of a packet of proposed exhibits to the Health Department's appeals board did not violate SPS Tire's due process rights because it was not an *ex parte* contact, did not bias the board, and did not prejudice SPS Tire. Moreover, the Health Department contends, SPS Tire waived this claim by agreeing that its concerns had been resolved and continuing with the hearing.

## II. DISCUSSION

### A.  CONSENT AGREEMENT CAPS

The court finds no merit to SPS's Tire's first argument that the Health Department's voluntary consent agreements cannot exceed $1,000. The court, however, finds that given the circumstances of this specific case and the evidence presented, the Health Department's consent agreement may not exceed $3,000. The State Implementation Plan ("SIP") in effect at the time capped such fines at $3,000. The SIP in question specifically states:

> General enforcement provisions [ ….] The County does not have legal authority to impose direct fines on stations or inspectors, but suspension or revocation of a station permit results in a substantial loss of income that is far in excess of $100 fine suggested by the EPA guidance. Station fee settlements are based on 50% or the expected revenue from I/M testing during the suspension, **up to a maximum of $3,000.**

(emphasis added).

The SIP, including the section quoted above, has been codified both as Utah

Administrative Code § R307-110-35, as well as 40 C.F.R. § 52.2320(c)(61), through incorporations by reference.

There is no dispute that this cap was mistakenly inserted by the Utah Air Quality Board ("AQB") when it drafted the summary. After a local government entity such as the Health Department adopts I/M program regulations, the AQB incorporates those regulations into an SIP, which is submitted to the EPA for approval. AQB generally summarizes the regulations in the SIP's main body, but it also includes a copy of the actual regulations. In drafting the 2004 SIP amendment for the Health Department's I/M program, the AQB mistakenly inserted a $3,000 cap on negotiated consent agreements, instead of properly summarizing the Health Department's regulation, which has no cap.

While the Health Department argues that the actual regulations control over a summary of the regulations, the court disagrees. The SIP may be a "summary" of the regulations, but it is a lengthy, official-looking document that does not appear to contain any disclaimers that it is merely a summary and that no I/M Program station should rely on it. In this case, and in light of the language contained in the SIP at issue that the maximum station fee caps cannot exceed $3,000, the court finds that it would be patently unfair to find that there was no cap on consent agreements, particularly in light of the court's determination below that the regulations pertaining to what SPS Tire should have done in this situation were entirely unclear.

To the extent that SPS Tire has argued generally that the Health Department has exceeded its authority to pass or enforce the Emissions Testing Regulations, such a claim is rejected.

**B.      VEHICLES THAT CANNOT BE MADE "READY" TO TEST**

SPS Tire argues that there were no waiver procedures in the I/M regulations in 2006 &

2007 for cars that could not be made ready for emissions inspections, and they were not publicized in any I/M bulletin. According to SPS Tire, the I/M program bulletin dated March 20, 2007 addressed waiver issues for vehicles that failed inspections, but did not mention waivers for "not ready" vehicles. In fact, SPS Tire points out that, with regard to vehicles that could not be made ready, the bulletin specifically stated:

> Not Ready/Failure
> There are several stations that send customers to us when a vehicle fails or is not ready, **please stop**! All we can do for the customer is give them a copy of a drive cycle or give them a list of all test and repair stations within Weber County…

March 2007 Bulletin, attached as Ex. 6 to Docket No. 35. SPS Tire claims that it never sent its customer to the Health Department because the Bulletin specifically told them not to do that. Craig Butters, the President of SPS Tire and chair of the I/M program advisory committee, asserts that he had never heard of a waiver option for "not ready" cars and never knew of one to be publicized or discussed during 2006 or 2007.[4]

The Health Department, however, disagrees. It claims that its I/M program regulations provide a method whereby vehicle owners whose vehicles cannot be made ready to test can apply for a waiver through the Health Department, and it claims that SPS has put undue emphasis on the sentence in the March 2007 I/M Bulletin that tells stations not to send customers to the Health Department when a vehicle cannot be made ready to test.

Tellingly, however, the Health Department never cites the precise regulation that purportedly informs I/M stations about what to do when a vehicle cannot be made ready to test.

---

[4] The Health Department has moved to strike the portion of Mr. Butters' Declaration relating to this point. While Mr. Butters may lack foundation to assert that no waiver option applied to this situation, the fact that he, as the President of SPS Tire and chair of the I/M program advisory committee was not aware of any such option is not inadmissible.

The Health Department cites to § 9.20 of the Motor Vehicle Inspection and Maintenance Program Regulations, but it does not cite to any subsection, and it does not quote any language explaining what procedure should be followed in this situation. Indeed, the court has read all the subsections of § 9.20 of the Regulations, and the court cannot identify any applicable language.

As to the March 20, 2007 Weber County I/M Bulletin, which summarizes the requirements for a waiver under the I/M program regulations, there is undoubtedly confusion about what the instructions truly mean. The Bulletin clearly states that "there are several stations that send customers to us when a vehicle fails or is not ready," and it asks them to ***"please stop."*** The Health Department contends that, read in context, the language at issue is directed at stations that send customers to the Health Department *before* attempting to make the vehicle ready by running drive cycles or referring the owner to a station that can make repairs. The court, however, after reading the entire section of the Bulletin pertaining to waivers, fails to find that instruction in the language.[5]

The problem in this case appears to be that the Health Department–or certain of its employees– had in mind a procedure for dealing with vehicles that could not be made "ready," but the instructions to the I/M stations do not communicate whatever procedure might have been contemplated. Given the information provided to this court, it is not surprising that SPS Tire did not know what to do in this situation.

The court finds that the provisions regarding waivers for cars that could not be made

---

[5] The Health Department also argues that, even if the language of the regulation and/or the Weber County I/M Bulletin is unclear and thus the waiver provisions of the I/M program regulation were arbitrary and capricious, the court cannot void the entire regulation. Section 17.0 provides that provisions held invalid are severable from the rest of the regulation. The court agrees that there is no support for voiding the entire regulation.

ready are were either non-existent or confusing. While SPS Tire perhaps did not make the best choice in providing a false test result, SPS Tire was in an understandably difficult situation for which there was no clear guidance in the regulations or in the I/M Bulletin. This ambiguity provides an additional basis for the court's finding above that consent agreement in this case must be capped at a maximum $3,000.

**C.     ESTOPPEL**

The Health Department argues that SPS Tire is estopped (under a theory of equitable or promissory estoppel or breach of contract) from challenging the Health Department's ability to enforce its regulations or their content. The Health Department argues that SPS Tire has twice agreed to comply with the Health Department's I/M program regulations, and allowing SPS Tire to now challenge the Health Department's actions taken in part on the basis of those representations would be inequitable, and it would injure the Health Department's ability to enforce the regulations to which SPS Tire agreed.

SPS Tire argues, though, that given the lack of a waiver program or any other procedure for handling cars that cannot be made ready for emissions inspections and the fact that there are limits to the amount I/M stations can be fined for non-compliance, equitable estoppel should not be applied in the instant case. SPS Tire contends that it did the most that it could do in light of the lack of guidance from the Health Department Defendant with regard to vehicles that could not be made ready.

The court agrees with SPS Tire that it is not estopped from challenging the Health Department's regulations.

D.  **DUE PROCESS VIOLATION**

SPS Tire argues that its due process rights were violated during its appeal of the Health Department's suspension because it was prejudiced by the Health Department's delivery of proposed exhibits to the Board before the hearing. SPS Tire, however, cannot "demonstrate that the adjudication was infected by 'some prejudicial, fundamentally unfair element.'" *Energy West Mining Co. v. Oliver*, 555 F.3d 1211, 1219 (10th Cir. 2009) (quoting *Betty B Coal Co. v. Dir., OWCP*, 194 F.3d 491, 501 (4th Cir. 1999)). Therefore, the court finds that SPS Tire's due process rights were not violated.

### III. MOTION TO STRIKE BUTTERS AFFIDAVIT

While certain of the statements contained in the Affidavit are not proper (such as ¶¶ 5, 6), the court has not relied on any inadmissible statements in the Affidavit to reach its decision. Thus, the motion is moot.

### IV. CONCLUSION

Accordingly, IT IS HEREBY ORDERED that Defendant Weber-Morgan Health Department's Motion for Summary Judgment [Docket No. 30] is DENIED and its Motion to Strike Craig Butters Affidavit [Docket No. 45] is DENIED AS MOOT because the court did not rely on any inadmissible statements contained in the Affidavit.

While SPS Tire did not file a cross-motion for summary judgment, the court finds that the consent agreement at issue in this case may not exceed $3,000. It is unclear whether there are any claims left in this action or if the instant Memorandum Decision and Order resolves all claims. To that end, SPS Tire is directed inform the court whether all claims have been resolved

or not.[6]

DATED this 28th day of September, 2010.

BY THE COURT:

_____
DALE A. KIMBALL
United States District Judge

---

[6] Counsel may simply send a brief email to the court (utdecf_kimball@utd.uscourts.gov) and to opposing counsel.